This case, called for oral argument, is People v. Graham. Counsel? Thank you, Your Honor. May it please the Court and the Counsel. Unless the Court has other ideas, I thought I would start with my argument number one. Go right ahead. That is the one that concerns the mental health records of the complainant who was the State's key witness at trial. Like a lot of issues, this issue concerns competing interests that must be balanced. Here the competing interests are the defendant's constitutional right to cross-examine a witness on an aspect affecting credibility versus the witness's statutory right to confidentiality in her mental health records. I suggest that a proper balancing in this case requires an in-camera inspection of the complainant's mental health records. Do we have those records for presentation to the Court for consideration? No. So how do we know we can even get them? Well, we don't really know, I suppose. I mean, for all we know, they've been destroyed. The defendant was seeking a subpoena for the records, and the Circuit Court denied the motion. And do you know where those records, what state they were in? I do not know for a fact, but most likely Arkansas. Right. Here, as I say, the defendant sought to subpoena the mental health records, and the Court held a hearing. The defense counsel admitted that he knew very little about the mental condition of the complainant. He said that he had not seen the mental health records and had not even seen a diagnosis for the complainant. The prosecutor volunteered that the complainant had recently been diagnosed with bipolar disorder, and the judge denied the defendant's motion for the subpoena, saying that the defendant had failed to make the threshold showing that the records were material and relevant to the credibility of the complainant. And was the mental health records, was she in mental health treatment prior to these alleged assaults or after? Apparently it was after, only after. That's the only indication that we have. Now, my rhetorical question is what more could the defendant at that point have done to show the contents of these records or what they might indicate? If you truly do not have access to certain records, you cannot really show that the records are material or relevant to anything in particular. I have a case in my brief, People v. Dates, that refers to this, where the Court says, well, the State is essentially asking the defendant to show that these records are material and relevant when he doesn't even have access to the records, and that's unfair or impossible. I forget how they characterize it. I would suggest that either characterization would be correct. I suggest that given the nature of the diagnosis, bipolar disorder, and all that that could involve, and the importance of this complainant to the State's case, she was the key witness after all, given those issues, given those facts, it was enough for the defendant to show what he showed. When I say it was enough, I don't mean it was enough for him to go rummaging through all of the mental health records. All that I'm saying is that it was enough for the Court to issue this subpoena and inspect those records in camera. Of course, procedurally, the defendant must show that the requested records are material and relevant to the witness's credibility, and if he makes that showing, the records are discoverable. Then, if the witness invokes her statutory privilege, the Court must inspect the records in camera. I suppose I am assuming that the complainant, the witness, will invoke that statutory privilege, so for that reason, I'm requesting an in-camera inspection of those records. Perhaps I should move on to the second issue. The second issue involves an order for restitution payable to the grandparent of the complainant. Various statutes that I specifically cite in my argument establish that a sentencing order can include an order for restitution, and restitution may cover out-of-pocket expenses approximately caused by the defendant's criminal conduct. And the restitution is payable to the physical victim, as he or she is called, as well as to other victims. And the term victim includes not just the physical victim, but also, quote, a single representative, end quote, of the physical victim, quote, who may be the spouse, parent, child, or sibling, end quote, of the physical victim. Grandparent is not included on that statutory list. The order here concerns restitution to the grandparent. Certainly, the General Assembly may choose to amend that statute, expand the definition of victim to include a grandparent, or perhaps any person acting in loco parentis. However, that is the prerogative of the General Assembly, not of a court. So, in sum, I say that the Circuit Court was not authorized to order the defendant to pay restitution to the grandparent. And I ask this Court to... What would the language then mean, any other victims who may also have suffered out-of-pocket expenses, losses, damages, and injuries? Well, I think that the term victims makes sense only when you look at the definition. I think that's the next part of my written argument. It refers to the definition in a specific statute, which is the next statute that I talk about in the brief there. And that's where we have the definition of victim as the physical victim, actual victim, however they phrase it, plus a single representative who may be the spouse, parent, child, or sibling of that physical or actual victim. Let me go back to the mental health records. Certainly. State contends that the motion didn't give enough information that they were relevant, that the language was that the victim shows signs indicative of mental illness and intensive mental health treatment. But doesn't the statute require that those mental health records go to her credibility? That would make them relevant. Yes. And I think it's that general rule that the mental condition of a witness is relevant and evidence about the witness's mental condition is admissible to the extent that the condition or the records bear on the credibility of that witness's testimony. In argument one, I asked almost habitually for a reversal of the convictions. I think that the, you know, I have to further due deliberation. I think the appropriate remedy here is the remedy that I offer as the alternative remedy. And that is a remand to the circuit court for an in-camera inspection of the mental health records. If they can be obtained, I can say for sure that they can be. And then the court can decide what, if anything, can be divulged and used at the trial. Unless there are any further questions, thank you. I don't believe there are. Thank you, counsel. Counsel? May it please the court and counsel. Addressing briefly and initially a question raised by Justice Wesson at the beginning of the argument, I think in fairness to the defendant, I don't know, there may be acquisition issues with regards to getting the victim's mental health records. There's really a paucity of evidence regarding what, where, how, in a way that's part of what my argument is. I think, though, that in fairness to the defendant's position, that we're really right now at that initial stage in determining whether or not the defendant's made that threshold showing of relevance and how to release the defendant's or victim's credibility as a witness. So I think if that standard is met, then of course the issue is going to come up later with regards to that. But I don't think that we really have that kind of record right now to sort of prospectively determine whether it's even feasible. I don't know. I agree completely with that, that that's not the issue, whether we can get them or not, but whether we should have an opportunity to try to get them. Yes, that's correct. Obviously, if the court agrees with the defendant's argument, then it has to be. I agree with the defendant's proposed disposition. It should be remanded, basically, to go to the second step, which would be to encounter if that's even required, possibly subpoenaed out of state records. And that's something that has to be dealt with there if it comes to that. Certainly, I hope it doesn't come to that. But I just want to make that kind of record. I want to talk about it because I don't have a chance to do it in my brief. The defendant's case, and the defendant discusses it in the reply brief and puts in the brief a block quote with language that I think fairly enough is good language for the defendant in this respect. However, I think that there are problems with Dace, and I do want to discuss that with this court at the outset. Now, in Dace, what happened was that the defendant brought to the court's attention that the victim and witness had been subject to an involuntary commitment. Apparently, the basis for this commitment was that the victim and witness was dangerous to others, and possibly, I believe, suicidal or mentally ill. That's what it said. There was, the statement presented to the court, a court file, if you will, but it didn't go into the treatment or the diagnosis or release or anything of that nature. And what bothered Dace Court was that it didn't seem to be the proper disposition for the court, having had that information to then deny further discovery, having knowledge of the fact that it was prior commitment. Now, of course, arguably the facts of that are different than the facts here, but it's not the facts necessarily the distinction of the facts that I want to hone in on. I want to talk about this quote. And it says, in essence, the state urges us to require the defendant to demonstrate the relevance and materiality of information to which he has no access. It goes on to say that there's no reasonable method for the defendant to establish any more than what is already known in the court records, the court records as given to the court. If the state's argument prevailed, the defendant would be unable to make the proposed showing, unless by some fortuity the witness was either institutionalized at the time of the offense, and that references some earlier cases that the court discusses.  Or, even less likely, the witness voluntarily revealed his mental illness and treatment. Now, looking at this first sentence, in essence, the state urges us to require the defendant to demonstrate the relevance and materiality of information to which he has no access. I want to draw the court back to the case that we cite in our brief called People v. Bean. And Bean itself discusses a case called Pennsylvania v. Ritchie. And what happened in these cases, and this discussion about whether it's proper for a court to conduct an in-camera review to the exclusion of the participation of either the prosecution or the defense to review confidential records and then make a determination whether or not they should be disclosed for purposes of sixth amendment. So you have that balance of the sixth amendment and confidentiality. And what the court says in discussing with Ritchie is that, you know, the defendant has no right to cast his advocate's eye over statutorily privileged records. If he knows of any particular information contained in the records, he is free to request it directly from the court in arguing in favor of its materiality. Now, that framework of Ritchie sort of underlies the case law, which requires the defendant to make this threshold jump in order to basically pierce the veil of confidentiality, if you will, to get to the next stage, which would be the in-camera review. Because certainly that confidentiality is breached to some degree by the courts accessing and reviewing the records. It's the first stage before it's welcome to come later. Therefore, when the Dase Court says the state urges us to require the defendant to demonstrate the relevance and materiality of information to which he has no access, and it says this in sort of a surprising tone, like I can't believe, you know, they can't believe the state's making this. You have to consider the outburst of this, which is that therefore the state must be able to have access to information in order to demonstrate the relevance and materiality of the information, which is completely contrary to what the law is. So it's our position that Dase, at least as it frames it here, is wrong, because what it does is essentially eliminate it based upon nothing more than the proffering of a belief that there's some mental health issue relevant to the case, to basically then grant access to or initiate access to the records in order to substantiate the relevance and materiality of the information. The thing is that because medical records and psychiatric records, there's this statutory presumption of confidentiality, then the defendant has to come forward and show the materiality and relevance, and if they don't have that information, well, then the defendant can't make that showing, and that's the point. To accept this Dase formulation would essentially basically eliminate the need for the defendant to even make that showing beyond a reference to the fact that there's a medical history. So, you know, I always prefer to write these things out probably from the sand, but I don't have the surrogate, so I want to get that out there for the court to think about, because obviously Dase has good language with the defendant, and he gets up here and argues, understandingably, I would as well, but I think that there is an analytical flaw in that particular passage that the court has in the Dase decision. Do you think it's relevant that this alleged bipolar occurred after the assault as opposed to before the assault? I do. Why? I kind of, I'm a big with the court, I suppose, and I don't know if it's just kind of moralism or whether it's really the legal basis, but from what we know, it appears that the, I think from the victim's own testimony at the trial, that the bipolar disorder and the post-traumatic stress syndrome were products of the defendant's criminal acts. And you know the circuit court in this case was extremely bothered by the defendant having been the perpetrator of the acts which precipitated the mental health issue by using that same causative, you know, result to impeach the very person who's accusing him of the crime. I've thought long and hard about this, because obviously when you look at some of these other cases, when you talk about a person's institutionalized time, we have a mental health problem prior to trial where this occurs after the trial. So I think that that is relevant to that extent. First, he's presumed innocent at the time of his trial. He's presumed, correct, he's presumed innocent, but he was found guilty. The presumption's not there anymore. So if we're going to sort of look back on it this way, and you're asking the court to go back and order this, you know, I don't know. No one knows what he's referencing, and I'm going to out grant that we don't know. So that's why we're at the sort of stage where I think that the focus really has to be on what the defendant has come forward and proffered as far as adequate information to get to this next level. The court felt it was insufficient. The problem in any case of this nature is there's no fixed criteria for what is and is not a sufficient showing. The court here made that determination, I think reasonably so, because the only thing that the defendant came forward with is that she exhibited signs of mental illness. We don't know what these signs are. Underwent intensive mental health treatment, which is meaningless. Does it mean inpatient, outpatient, counseling, you know, reading books? I don't know. Is currently medicated. And we don't know the source of this information as I find it. And then sort of summarily concludes that it may affect his or her ability to accurately reflect or recollect matters, which kind of has the feel of a boilerplate in order to satisfy the prerequisite shown. I don't think it's a matter of law or analysis of the circuit court's conclusion in that regard, based on this information, that the defendant failed to meet their initial burden and was incorrect. What about the fact that the state conceded she was suffering from bipolar disorder? I agree. If I could finish this. Sure. I want to tie it in really quick with the defendant's DSM argument. But I think the state volunteering that, while knowable, doesn't necessarily change the particular aspect of how does that relate to the victim's credibility. Now, in this case, the defendant having acquired this information did nothing to perhaps press the matter, although certainly now the defendant had more information to say, well, okay, you've got this particular mental illness and that can affect the credibility this way. On appeal, the defendant sort of tries to plug the hole by citing the DSM. All I want to say in that regard, because I have argued that it's not really appropriate for this court, the defendant cites a couple of cases where the DSM is discussed by the appellate court. If you look at the Faxos cases, the DSM was also discussed at the circuit court level by witnesses. So that's a big difference. And that's the problem we have here. You know, having had opportunity before and after trial in light of the victim's testimony, the defendants could still come back on a post-trial basis and remain that claim that there was an error here and now on the access to that, but it didn't do so. I'm not arguing the waiver per se. I'm just saying that the state of the record is just not, it is such that the circuit court's ruling was not in error and this court should have found it. Thank you. Are there any other questions? Thank you. Thank you very much. Counsel, rebuttal, and if you need a few extra minutes, we'll grant you those also. Even now, nobody has suggested what else the defendant could have done at the time of that hearing to show that the contents of those records were material and relevant. He did not have access to them. As the father of the victim, wouldn't he have access to them? I wondered that same thing. And perhaps Arkansas law has something to do with it. I don't know. It wasn't explored at all. I wondered why the parent of the child would not have access, but apparently he did not have access. That really is all that I have to say. Thank you. Thank you. We appreciate the briefs and arguments of counsel. We'll take the case under advisement.